UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EDWARD NUNN,

        Plaintiff,

v.                           CAUSE NO. 3:23cv439 DRL

UNITED STATES STEEL CORPORATION,

        Defendant.

OPINION AND ORDER

Edward Nunn suffers from ichthyosis—a condition that causes dry or scaly skin with the corollary effect of making it difficult for him to grow hair. He worked at United States Steel Corporation at its East Chicago tin facility as a utility technician driving tractors and operating an overhead crane. The company terminated him after he reportedly failed to comply with drug and alcohol testing policies that required a hair sample. He claims USS failed to accommodate him under the Americans with Disabilities Act. USS requests summary judgment. The court grants the motion.

BACKGROUND

Ichthyosis, a lifelong condition, makes Mr. Nunn's skin scaly and uncomfortable [24-1 Tr. 53-55]. It makes growing hair difficult for him—his hair doesn't grow more than roughly a quarter of an inch in length and takes longer to grow [*id.* 56-57]. Mr. Nunn describes the condition as painful and says it often makes him extremely hot [*id.* 54]. He compared it to being an alligator [*id.*]. That pain doesn't stop him from working, though he has needed to learn to live with it [*id.* 55].

In 2012, USS hired Mr. Nunn as a utility technician at its East Chicago factory [*id.* 18]. He was a bargaining unit employee represented by the United Steelworkers Union [*id.* 38]. USS and the Union negotiated a Basic Labor Agreement (BLA), which governed his employment terms [*id.* 38-39; 24-3]. The BLA included a drug and alcohol testing policy for employees [24-3 § III(G)]. Critically for Mr. Nunn,

that policy allowed testing as part of the mandatory physical examination for employees "returning to work after an absence due to layoff in excess of ninety (90) days" [*id.* § III(G)(2)]. The company was required to use "scientifically accepted methods for evaluating use" [*id.* § III(G)(3)].[1]

Mr. Nunn participated in drug testing in 2012 when he began his employment, later again in 2013, and then in 2015 after returning from a layoff [24-12; 24-13; 24-14]. Each time, company records show that Mr. Nunn provided hair samples (although Mr. Nunn says he didn't provide a hair sample in 2015) [24-12; 24-13; 24-14; 24-1 Tr. 94]. This case arises from Mr. Nunn's inability or failure to provide a hair sample for a drug test to return to work when USS recalled him to work in October 2020 from a layoff beginning the prior year [24-9 ¶ 17-18].

When Mr. Nunn reported for his mandatory examination, the plant medical department told him he couldn't return to work because he had high blood pressure and lacked enough hair to complete a drug test [24-1 Tr. 96; 24-9 ¶ 18-19]. He had shaved his head within a week of reporting for his physical [24-1 Tr. 160]. USS and the Union agreed to provide him more time to grow out his hair for testing [24-9 ¶ 21]. On October 30, 2020, a Union griever visited Mr. Nunn's home and asked him to sign a Hair Sample Agreement [24-1 Tr. 105].

The HSA required Mr. Nunn to grow at least 1.5 inches of head hair and provided that "failure to provide a sufficient head hair sample or other violation of this agreement could result in the employee being relieved from duty and the possibility of discipline up to and including discharge" [24-4]. Mr. Nunn admits that he signed the agreement, though he contends that he did not sign it knowingly and later told the person who had him sign it to "tear that up" because he could not grow hair [24-1 Tr. 113]. The company received the signed agreement nonetheless [24-9 ¶ 24].

---

[1] The company agreed not to use hair testing only for "for cause" tests—where there was a reasonable basis to believe an employee was affected by drugs or alcohol [24-3 § III(G)(2), (3)].

2

Mr. Nunn returned to the company's medical department on January 14, 2021 to provide a hair sample for drug testing so that he could return to work, but a hair sample could not be collected at this appointment [*id.* ¶ 26-27]. At the time, Mr. Nunn says the nurse practitioner recognized his condition as ichthyosis and acknowledged that he would have a difficult time growing hair [24-1 Tr. 76]. He says the nurse practitioner told him that she would email labor relations about it [*id.* 59]. He never provided USS with any documentation of his condition, but the nurse practitioner noted "ichthyosis" on his illness screening questionnaire [24-9 ¶ 28; 30-4 at 2].

About a week after this second appointment, USS sent him notice of a disciplinary action—a five-day suspension subject to discharge—for failing to comply with the drug and alcohol testing procedures and violating the HSA [24-9 ¶ 29; 24-5, 24-6]. Mr. Nunn then participated in a factfinding hearing on March 11, 2021 to decide whether he had violated the HSA [24-9 ¶ 30-31; 24-1 Tr. 65]. After the hearing, Mr. Nunn agreed to release his medical records so that USS could see any medical documentation related to his condition [24-1 Tr. 148]. Though the nurse practitioner noted "ichthyosis" on the screening questionnaire from Mr. Nunn's report, the parties agree that the company possessed no other internal medical records and received no external medical records showing Mr. Nunn's diagnosis or treatment for ichthyosis [24-9 ¶ 35-38; 30 ¶ 45-46].

At the hearing, Mr. Nunn asked to be allowed to take a blood test rather than a hair sample test as an accommodation [24-1 Tr. 65], and the company declined [*id.* 70]. He also took off his clothes and showed his skin condition, which he believes is obvious to the average observer [*id.* 136, 145; *see also* 30-2 (photographs)]. Thereafter, on March 29, 2021, USS terminated Mr. Nunn for failing to comply with drug and alcohol testing procedures [24-7]. He sued, alleging the company's failure to accommodate him and discrimination (termination) on the basis of his disability. He pursues only a failure to accommodate claim under the ADA today and abandons any other.

3

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

The ADA exists to eliminate "discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It applies to qualified individuals "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Under the ADA, there are two types of discrimination claims: failure to accommodate and disparate treatment." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 n.4 (7th Cir. 2015). Only a failure to accommodate claim remains today.

For an ADA failure-to-accommodate claim, Mr. Nunn must show that he was a qualified individual with a disability, his employer was aware of his disability, and his employer failed to

4

accommodate his disability reasonably. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). A qualified individual with a disability is one who can perform the essential functions of the employment positions that the individual holds, with or without reasonable accommodation. 42 U.S.C. § 12111(8). ADA regulations allow an employer to use medical "fitness-for-duty exams" if they are "job-related and consistent with business necessity." 29 C.F.R. § 1630.14(c). Both sides agree that drug and alcohol testing at USS is critical for safety [30 ¶ 7].

USS argues that Mr. Nunn has not established that he has a qualifying disability under the ADA. Mr. Nunn bears the burden of establishing that he is disabled. *Povey v. City of Jeffersonville*, 697 F.3d 619, 624 (7th Cir. 2012). A medical condition "by itself does not constitute a disability" under the ADA. *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 642-43 (7th Cir. 2005). "Merely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 195 (2002), *abrogated by statute on other grounds*, *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 888 (7th Cir. 2019). Rather than offer "general protection of medically afflicted persons," the ADA protects people from discrimination "because they are in fact disabled or because their employer mistakenly believes them to be disabled." *Christian v. St. Anthony Med. Ctr.*, 117 F.3d 1051, 1053 (7th Cir. 1997) (also discussing a hypothetical skin condition).

The court conducts an individualized inquiry to determine whether someone is disabled. *Byrne v. Bd. of West Allis-West Milwaukee*, 979 F.2d 560, 565 (7th Cir. 1992); *see also* 29 C.F.R. 1630.2(j)(1)(iv). The ADA provides three ways to establish a disability. Mr. Nunn must show (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) that he is "regarded as having such an impairment." 42 U.S.C. § 12102(1). The last one means that an individual "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity" so long as the impairment is not "transitory and minor." 42 U.S.C. § 12102(3).

5

Though the standard for being regarded as disabled is broader, *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1037-38 (7th Cir. 2021), Mr. Nunn still must show that USS believed that his condition "was an impairment—as the ADA defines that term," *Richardson*, 926 F.3d at 892; *see also* 29 C.F.R. § 1630.2(j)(1)(iv) ("functional limitation that is lower" than the pre-amendment standard).

The ADA instructs courts to construe the definition of disability "in favor of broad coverage." 42 U.S.C. § 12102(4)(A). Major life activities include major bodily functions, including "normal cell growth." 42 U.S.C. § 12102(2)(B). Regulations too say an impairment doesn't need to "prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting" because it is not meant to be "a demanding standard." 29 C.F.R. §§ 1630.2(j)(i)-(ii). "[N]ot every impairment will constitute a disability," 29 C.F.R. § 1630.2(j)(ii), and not every condition that causes discomfort, even at work, will qualify, *see Oliver v. Amazon.com Servs. LLC*, 2024 U.S. App. LEXIS 9951, 9 (7th Cir. Apr. 24, 2024) (anxiety resulting in some loss of concentration at work didn't rise to the level of disability). A plaintiff can "establish a substantially limiting impairment by presenting evidence of [his] relative inability to perform a major life activity as compared to most people in the general population." *Frazier-Hill v. Chi. Transit Auth.*, 75 F.4th 797, 803 (7th Cir. 2023) (quotations omitted).

USS says Mr. Nunn doesn't have a physical or mental impairment that substantially limits a major life activity, doesn't have a record of one, and wasn't regarded as having one. It cites case law holding that skin conditions alone are not disabilities under the ADA. *See, e.g., Lohmeier v. Gottlieb Mem'l Hosp.*, 2024 U.S. Dist. LEXIS 38198, 39-40 (N.D. Ill. Mar. 5, 2024) (no reasonable jury could find that shingles episodes limited major life activities even when it could interfere with sleep and cause pain); *May v. Special Admin. Bd. of the Sch. Dist. of St. Louis*, 2021 U.S. Dist. LEXIS 142561, 20-22 (E.D. Mo. July 30, 2021) (though plaintiff suffered from tinea versicolor, it wasn't a disability under the ADA because it didn't limit major life activities). Mr. Nunn responds that his condition is painful, causes him to feel hot,

6

prevents him from growing hair longer than a quarter of an inch, affects his attitude, subjects him to social ridicule, and has made him learn to work through the pain [24-1 Tr. 54-55].

The court sympathizes with Mr. Nunn's condition and discomfort, but the record falls short of establishing for a reasonable jury what major life activities his ichthyosis impacts to sustain an ADA claim. Though his skin condition may affect what he wears in public and thereby affect his attitude, and though it may cause him pain, he testified that ichthyosis doesn't keep him from doing any daily activities, and he denied that it impacts his ability to work, saying he "learned to deal with it a long time ago" and has managed to "work through the pain" [24-1 Tr. 55]. Much to his credit, and indeed showing his resilience, he held this job with USS for nearly a decade and honorably served in the Army without this condition ever holding him back [*id.*].

Whether ichthyosis might be more serious and limit daily activities for others, *see, e.g., Alexis S. v. Kijakazi*, 2023 U.S. Dist. LEXIS 175501, 15-16 (M.D.N.C. Sept. 28, 2023) (ichthyosis decreased grip strength and mobility); *Capers v. Shulkin*, 2017 U.S. App. Vet. Claims LEXIS 949, 8-9 (Vet. App. June 29, 2017) (ichthyosis impaired ability to work and do daily activities), that doesn't seem to be the case for Mr. Nunn. The record would not permit a reasonable jury to find, for instance, that his condition interferes with "caring for [him]self, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, [or] working." 42 U.S.C. § 12102(2)(A). He thus cannot establish a disability on the basis of a physical impairment that substantially limits one or more of his major life activities. *See* 42 U.S.C. § 12102(1)(A).

Mr. Nunn has not argued any other theory of disability. He cannot show a record of it (nor made this argument). *See* 42 U.S.C. § 12102(1)(B). That then leaves, as the only other option for establishing a disability, whether Mr. Nunn was regarded as having such an impairment—an actual or perceived physical impairment whether it limited (or was perceived to limit) a major life activity or not. *See* 42 U.S.C. §§ 12102(1)(C), (3)(A). This option will not help him today.

For one, he has not argued that he fits this category, so the court need not address a theory that he has not advanced. *See Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014). For another, and really just for his edification because the point otherwise has been waived, the record offers no evidence the company—and particularly the decisionmaker—regarded him as impaired, *see Silk v. Bd. of Moraine Valley Cmty. Coll.*, 795 F.3d 698, 707 (7th Cir. 2015), or "took adverse action against him based on the belief that his condition was an impairment," *Richardson*, 926 F.3d at 892; *see also Steffen v. Donahoe*, 680 F.3d 738, 744 (7th Cir. 2012) (discussing the 2008 amendments and change in standard); 42 U.S.C. § 12102(3)(A) (adverse action "because of" actual or perceived impairment).

Even if a jury could say USS knew something about his ichthyosis from its nurse practitioner and its hearing officer within the labor relations department who termed him [24-1 Tr. 58-60, 64; 24-5; 24-6; 24-9], the record would not reasonably permit a finding that the company regarded him as impaired and took adverse action because it believed his condition made him impaired. Merely knowing about a condition isn't the same thing as regarding someone as being impaired. No medical documentation came thereafter that caused the company to regard Mr. Nunn as functionally limited, even to perceive him as such. Indeed, the company had records of three successful hair drug tests, a hair growth chart, an agreement to provide a hair sample, and a statement that he shaved his hair. So this alternative option for arguing disability, even if he had tried to make it, would not prevail.

## CONCLUSION

Mr. Nunn hasn't established that he has a disability within the meaning of the ADA, so the court must grant summary judgment for USS without reaching any other argument. *See Povey*, 697 F.3d at 624. Accordingly, the court GRANTS USS's summary judgment motion [23]. This order terminates the case.

SO ORDERED.

October 30, 2024        *s/ Damon R. Leichty*
                        Judge, United States District Court